## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LANNIE PRINCE,** | |
| **Plaintiff,** | |
| **v.** | Civil Action No.  05-cv-0663 (JDB) |
| **CONDOLEEZA RICE, SECRETARY,** **U.S. DEPARTMENT OF STATE,** | |
| **Defendant.** | |

## MEMORANDUM OPINION

Plaintiff Lannie Prince brings this action against defendant U.S. Department of State pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§1981"), purporting to challenge defendant's disparate treatment of her based upon her age,[1] race, and gender, as well as the disparate impact allegedly inflicted upon her by a facially-neutral employment practice.  Plaintiff also asserts that defendant intentionally caused her to suffer emotional distress and retaliated against her for her participation in a protected activity -- specifically, the filing of a discrimination complaint at the administrative level challenging her relocation from a "large enclosed office to a small cubicle that previously had been used [as] a supply storage area."  See Amend. Compl. at 11 ¶ 30. Presently before the Court is defendant's motion to dismiss all claims.  For the reasons that follow, defendant's motion to dismiss will be granted in part and denied in part.

---

[1]It should be noted that Title VII does not apply to claims of age discrimination.  Rather, such claims arise under a separate statute -- the Age Discrimination in Employment Act ("ADEA").  Plaintiff's Amended Complaint, however, never mentions or cites the ADEA.

## BACKGROUND

Plaintiff, an African-American female, is employed as an Equal Employment Opportunity Specialist at the GS-12 level with the Office of Civil Rights.  Id. at 4 ¶ 5; id. at 10 ¶ 24. Sometime prior to August 2003, Barbara Pope, the Assistant Secretary for Civil Rights, announced that one of her initiatives was to "improve and change the Department's ranking against other agencies and to reduce the time required to process complaints."  Id. at 4 ¶ 7.  In this regard, Ms. Pope offered to upgrade staff positions to the GS-13 level provided that the staff members assisted her in reducing the case load and processing cases within 180 days.  Id. at 5 ¶ 8.  Plaintiff expressed her desire to have her position upgraded and her job description redrafted accordingly, and claims that Ms. Pope indicated to her that she had taken appropriate steps toward accomplishing this for plaintiff by contacting the central personnel office.  Id. at 5 ¶ 9.  In order to aid in pursuing her initiative, Ms. Pope decided that the individuals then employed as EEO Specialists (including plaintiff) would need to be involved in all aspects of processing cases.  Id. at 5 ¶ 10.  Accordingly, she changed their titles to EEO Managers and required them to perform the additional task of acting as a liaison with management during the pendency of investigations and the processing of cases.  Id. at 5 ¶ 10.

Sometime in late 2002 or early 2003, Vacancy Announcement #03-0047 was posted, announcing the availability of one GS-13 position.  According to plaintiff, she was interested in the position, but the announcement listed only one vacancy.  Id. at 7 ¶¶ 14, 15; id. at 8 ¶ 20. Plaintiff did not believe herself to be the best-qualified candidate, and, as a result, decided not to apply for the position.  Id. at 7 ¶ 16.  When the vacancy was filled by Ms. Pope in March 2003, however, five individuals were hired.  Id. at 8 ¶ 17, 7 ¶ 14.  Plaintiff claims that had she known

there was the potential for more than one candidate to be selected, she would have applied.  Id. at 8 ¶ 18.  Presumably, then, although she did not think she would be the best-qualified candidate, she does believe she would have been in the top five.  Id.  Of the five selectees for the position, plaintiff claims that only one was an employee of the Office of Civil Rights; the remainder were taken from other government agencies or different offices of defendant.  Id. at 9 ¶ 21.

Later, in the summer of 2003, Ms. Pope delegated the authority to draft job descriptions to Mr. Frederick Whittington, a new employee.  Id. at 6 ¶ 11.  Mr. Whittington drafted a position description for the EEO Specialists (including plaintiff) that did not mention the new duties that accompanied the designation as EEO Manager.  Id. at 6 ¶ 12.  Plaintiff claims that the employees were told to review the position descriptions and submit feedback, but that no one ever followed-up to amend the description as she recommended or to upgrade her position from GS-12 to GS-13.  Id.  Shortly thereafter, on August 6, 2003, plaintiff filed a complaint against defendant alleging race, gender, and age discrimination based upon Pope's failure to redraft her position "as promised."  Id. at 4 ¶ 6.  According to plaintiff, Pope's failure to fulfill her promise caused plaintiff to be denied a promotion.  Id.  Pope allegedly declined to participate in alternative dispute resolution or mediation activities with plaintiff, despite her willingness to do so with respect to "similarly situated" Caucasian employees.  Id. at 6-7 ¶ 13.

Plaintiff contends that the August 6, 2003 discrimination complaint also alleged that she had been retaliated against by defendant, although it is unclear on what basis.  See id. at 4 ¶ 6.  The Amended Complaint alleges that plaintiff was removed from a "large enclosed office to a small cubicle that previously had been used [as] a supply storage area," after which she filed a second discrimination complaint challenging this relocation.  Id. at 11 ¶ 31.  As a result of having

filed this complaint, plaintiff claims that she was retaliated against in three ways: (1) defendant removed the "the EEO [C]ounselor Co-ordinator duties" from her job responsibilities, id. at 11-12 ¶ 31; (2) her "third-line supervisor" refused to assign her to an "enclosed office or any other work area when one became available," id. at 11-12 ¶ 31; and (3) defendant designated plaintiff as Absent Without Leave ("AWOL") during the three hours that she left work on or about November 2, 2004 to "exercise her rights to vote" at the polls, id. at 12 ¶ 32.  As a result of her designation as AWOL, plaintiff lost three hours' pay.  Id.  She subsequently filed a third administrative discrimination complaint (following the initiation of the present court action) that challenges her AWOL designation.  See Def.'s Exh. 1.

## LEGAL STANDARDS

### I.     Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987).  All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 346 (2005) (quoting Conley, 355 U.S. at 47).  "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

Under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor.  Leatherman v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979).  The plaintiff must be given every favorable inference that may be drawn from the allegations of fact.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  However, "the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations."  Kowal v. MCI Comm. Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); see also Domen v. Nat'l Rehab. Hosp., 925 F. Supp. 830, 837 (D.D.C. 1996) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

## II.     Conversion of a Motion to Dismiss to a Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(c)

When, on a Rule 12(b)(6) motion, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  Fed. R. Civ. P. 12(b); see Yates v. District of Columbia, 324 F.3d 724, 725 (D.C. Cir. 2003).  Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion by "informing the district

court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, 'which it believes demonstrate the absence of a genuine issue of material fact.'"  Id. (quoting Fed. R. Civ. P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position.  Id. at 252.  By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment.  Celotex, 477 U.S. at 322.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.

## III.    **The McDonnell Douglas Framework**

Disparate impact, disparate treatment, and retaliation claims brought pursuant to Title VII are analyzed under the familiar burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  This framework applies to claims brought under § 1981 as well.  See Carney v.  American Univ., 151 F.3d 1090, 1092-93 (D.C. Cir.  1998) (noting that "to evaluate claims under 42 U.S.C. § 1981 . . . courts use the three-step McDonnell Douglas framework for establishing racial discrimination under Title VII," and assuming without deciding

that a claim of retaliation is authorized under § 1981 and subject to the same framework).  The

first step in the framework requires a plaintiff to carry the burden of establishing a prima facie

case by a preponderance of the evidence. McDonnell Douglas, 411 U.S. at 802; Tex. Dep't of

Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  In order to make out a prima facie case

of discrimination, a plaintiff must show that "(1) she is a member of a protected class; (2) she

suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference

of discrimination." Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002) (quoting Brown v.

Brody, 199 F.3d 446, 452 (D.C. Cir. 1999)).  The elements of a prima facie case for retaliation

require that plaintiff establish: "(1) that she engaged in statutorily protected activity; (2) that the

employer took an adverse personnel action; and (3) that a causal connection existed between the

two." Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985) (quoting McKenna v. Weinberger,

729 F.2d 783, 790 (D.C. Cir. 1984)); Brody, 199 F.3d at 452.

Once the plaintiff establishes a prima facie case, the burden then shifts to the employer to

articulate a legitimate, non-discriminatory reason for its actions.  McDonnell Douglas, 411 U.S.

at 802.  The employer's burden, however, is merely one of production.  Burdine, 450 U.S. at

254-55.  The employer "need not persuade the court that it was actually motivated by the

proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to

whether it discriminated against the plaintiff." Id.

If the employer is successful, the burden shifts back to the plaintiff to show that the

employer's stated reason was a pretext for discrimination or retaliation.  Reeves v. Sanderson

Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).  The plaintiff "may attempt to establish that he

was the victim of intentional discrimination 'by showing that the employer's proffered

-7-

explanation is unworthy of credence.'" Id. (quoting Burdine, 450 U.S. at 256).  But "[p]roof that

the defendant's explanation is unworthy of credence is simply one form of circumstantial

evidence that is probative of intentional discrimination." Reeves, 530 U.S. at 147.  Thus, the

trier of fact may also "consider the evidence establishing the plaintiff's prima facie case 'and

inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is

pretextual.'" Id. (quoting Burdine, 450 U.S. at 255 n.10).  "Whether judgment as a matter of law

is appropriate in any particular case will depend on a number of factors . . . includ[ing] the

strength of the plaintiff's prima facie case, the probative value of the proof that the employer's

explanation is false, and any other evidence that supports the employer's case and that properly

may be considered on a motion for judgment as a matter of law." Reeves, 530 U.S. at 148-49.

As the D.C. Circuit has explained:

> Assuming then that the employer has met its burden of producing a
> nondiscriminatory reason for its actions, the focus of proceedings at trial (and at
> summary judgment) will be on whether the jury could infer discrimination from
> the combination of (1) the plaintiff's prima facie case; (2) any evidence the
> plaintiff presents to attack the employer's proffered explanation for its actions;
> and (3) any further evidence of discrimination that may be available to the
> plaintiff (such as independent evidence of discriminatory statements or attitudes
> on the part of the employer) or any contrary evidence that may be available to the
> employer (such as evidence of a strong track record in equal opportunity
> employment).

Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc); see also

Waterhouse v. District of Columbia, 298 F.3d 989, 992-993 (D.C. Cir. 2002).

Although the "intermediate evidentiary burdens shift back and forth" under the

McDonnell-Douglas framework, "'[t]he ultimate burden of persuading the trier of fact that the

defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"

Reeves, 530 U.S. at 143 (quoting Burdine, 450 U.S. at 253). Once the defendant has proffered a

legitimate non-discriminatory reason for its action, then, the question is whether that proffered

reason is a pretext for discrimination. At this point, the McDonnell Douglas shifting burdens

framework effectively evaporates -- the sole remaining issue is discrimination vel non, and "to

survive summary judgment the plaintiff must show that a reasonable jury could conclude from all

of the evidence that the adverse employment decision was made for a discriminatory reason."

Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003); see Reeves, 530 U.S. at 142-43.

Examination of that issue in this setting therefore requires consideration of all the relevant

circumstances in evidence, including the strength of the prima facie case, any direct evidence of

discrimination, any circumstantial evidence that defendant's proffered explanation is false (which

may be enough with the prima facie case to infer unlawful discrimination), and any properly-

considered evidence supporting the employer's case. Reeves, 530 U.S. at 147-48; see also

Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1151 (D.C. Cir. 2004); Lathram, 336 F.3d at

1089; Waterhouse, 298 F.3d at 993; Aka, 156 F.3d at 1290.

## ANALYSIS

### I. Plaintiff's Failure to Exhaust Administrative Remedies

As a threshold matter, defendant asserts that plaintiff failed to exhaust administrative

remedies before filing this action with respect to the retaliation claim stemming from her

designation as AWOL in November 2004. Def.'s Mem. Supp. at 12. The record shows that

plaintiff did not present this charge of discrimination at the administrative level until June 7,

2005, approximately five days after amending her complaint to include this claim. See Def.'s

Exh. 1.[2]  In response, plaintiff contends that the exhaustion requirement does not apply to retaliation claims.  Plaintiff, however, is mistaken.  To be sure, there is some authority for her position.  See Turner v. District of Columbia, 383 F. Supp.2d 157, 178 (D.D.C. 2005) (citing Baker v. Library of Congress, 260 F. Supp.2d 59, 66 n.4 (D.D.C. 2003)).  But the soundness of this authority is subject to scrutiny.  See Adams v. Mineta, No. Civ.A. 04-856(RBW), 2006 WL 367895, at **3-4 (D.D.C. Feb. 16, 2006); Nurriddin v. Goldin, 382 F. Supp. 2d 79, 92-93 (D.D.C. 2005); Romero-Ostolaza v. Ridge, 370 F. Supp. 2d 139, 148-49 (D.D.C. 2005).

Specifically, cases like Turner are based on the now-defunct "continuing violation" exception to the exhaustion requirement.  That theory stemmed from the assumption that, with respect to employers that had engaged in a pattern of Title VII violations against a particular plaintiff, requiring the plaintiff to file yet another complaint would be counterproductive because it might beget additional retaliation "necessarily related to the underlying charge."  Turner, 383 F. Supp.2d at 178 n.11; Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992).  But the continuing violation exception was explicitly rejected by the Supreme Court in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).  Morgan requires a plaintiff to exhaust all administrative remedies for each "discrete" incident of discrimination or retaliation that rises to the level of an unlawful employment practice.  536 U.S. at 110-113.  Morgan involved claims of both discrimination and retaliation: "We hold that the statute [Title VII] precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period."  Id. at 105.  Failures to promote, terminations, denials of transfer, and refusals to hire are considered discrete acts that,

---

[2]Because the Court's analysis of the exhaustion issues involves the consideration of evidence outside the Amended Complaint, defendant's motion to dismiss has been converted to a motion for summary judgment in this limited regard.

unlike hostile work environment claims, are readily identifiable; hence, no special exception from the exhaustion requirement is warranted.  Id. at 114.  Although cases like Turner may post-date Morgan, they fail to confront the issue of exhaustion as it has been shaped by Morgan -- that is, they continue to apply the pre-Morgan principles to post-Morgan situations.  See Adams, 2006 WL 367895, at *4 n.3.  The single allegedly retaliatory incident involving the designation of plaintiff as AWOL in November 2004 is a discrete act that, under Morgan, plaintiff was required to present at the administrative level before including it in a federal lawsuit.  Because plaintiff has not done so, defendant is entitled to summary judgment on this portion of Count Three (see Amend. Compl. ¶ 32).

With respect to the claim in Count Four for intentional infliction of emotional distress, defendant likewise asserts that plaintiff has failed to satisfy the applicable exhaustion requirements.  Unlike the retaliation claim discussed above, however, plaintiff argues otherwise.  The burden rests with defendant to establish plaintiff's failure to exhaust by a preponderance of the evidence.  Brown v. Marsh, 777 F.2d 8, 13 (D.C. Cir.1985).  To this end, defendant has submitted an affidavit stating that "[t]here is no record of Lannie Prince ever submitting a written claim for a sum certain to the Department of State asserting a tort claim against the Department or any of its employees."  Def's Mem. Supp. Ex. 2 at ¶ 4 (Hartfield Decl.).  Plaintiff's response consists of a broad assertion that she exhausted her administrative remedies through the filing of her EEO Complaint.  She has not, however, identified for the Court -- or defendant -- the specific issues that were included in that complaint.  Indeed, plaintiff's Amended Complaint makes several confused references to the filing of discrimination and retaliation claims with defendant prior to pursuing this action, but none of them suggest that those claims included her assertions

of intentional infliction of emotional distress.  The confusion is compounded, moreover, by plaintiff's failure to recognize the difference between tort claims such as she asserts in Count Four and discrimination claims brought under Title VII.

It is well-established that, as defendant states, instrumentalities of the federal government are immune from suit unless the federal government has consented to suit (commonly referred to as "waiving sovereign immunity").  E.g., United States v. Mitchell, 445 U.S. 535, 538 (1980); United States v. Sherwood, 312 U.S. 584, 586 (1941).  The Federal Tort Claims Act ("FTCA") , 28 U.S.C. §1346(b), 2671-80, constitutes such a waiver with respect to tort claims.  But even when the FTCA applies, it does not dispense with the requirement that all available administrative remedies must be exhausted before the filing of a lawsuit in federal court.  See 28 U.S.C. § 2675(a); McNeil v. United States, 508 U.S. 106, 113 (1993).

The FTCA requires a plaintiff to present the defendant with a sufficiently-detailed complaint describing the alleged injury and the damages sought.  The plaintiff obtains the right to file a lawsuit in federal court in one of two ways: (1) upon receipt of a written denial of her complaint from the defendant; or (2) upon the passage of six months from the filing of the administrative complaint, during which time no final agency decision has been rendered.  28 U.S.C. § 2675(a).  The record on this point consists only of defendant's sworn affidavit stating that plaintiff did not exhaust her administrative remedies and plaintiff's unsupported assertions to the contrary.  In the absence of any evidence to rebut defendant's showing, the Court concludes that defendant has carried its burden of proving plaintiff's failure.  Accordingly, the Court will grant defendant's motion for summary judgment on Count Four.  See Totten v. Norton, 421 F. Supp.2d 115, 122 (D.D.C. 2006) (citing Johnson v. DiMario, 14 F. Supp. 2d 107, 111 (D.D.C.

-12-

1998)).

## II.    Plaintiff's Claims Under 42 U.S.C. § 1981

Plaintiff's Amended Complaint also purports to challenge defendant's alleged conduct pursuant to 42 U.S.C. § 1981.  There are, however, at least three problems with this attempt.  The first is that the Supreme Court has squarely held that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment."  Brown v. Gen. Servs. Admin., 425 U.S. 820, 835 (1976).  The D.C. Circuit has described the Court's holding in Brown as an "unqualified" one that was "derived from the legislative history and structure of the [Equal Employment Opportunity Act of 1972]."  Kivas v. Webster, 707 F.2d 524, 542 (D.C. Cir. 1983).  Brown, as the court of appeals explained, "precludes actions against federal officials for alleged constitutional violations as well as actions under other federal legislation."  Id.  That "other federal legislation" includes § 1981, which the plaintiff in Brown had in fact invoked.  See 425 U.S. at 824; see also Torre v. Barry, 661 F.2d 1371, 1374 (D.C. Cir. 1981) ("[A] federal employee who is covered by [Title VII] may not sue under section 1981 or the Fifth Amendment.");  Williams v. Bentsen, No. 93-5192, 1993 WL 469110, at *1 (D.C. Cir. Nov. 5, 1993) (summarily affirming the district court's dismissal of a federal employee's claim under § 1981 because "Title VII provides the exclusive judicial remedy for claims of discrimination in federal employment").  Because plaintiff is a federal employee, Title VII provides the "exclusive judicial remedy" for her discrimination claims and bars her from also suing under § 1981.  See Brown, 425 U.S. at 835.

Plaintiff's claim also fails under the plain language of the statute.  Section 1981, by its terms, protects certain enumerated rights "against impairment by nongovernmental

discrimination and impairment under color of <u>State</u> law." 42 U.S.C. § 1981(c) (emphasis added).

This language simply "does not apply to actions taken under color of federal law." <u>Davis v.</u>

<u>United States Dep't of Justice</u>, 204 F.3d 723, 725 (7th Cir. 2000) (per curiam) (affirming the

dismissal of plaintiff's suit against individual defendants acting "in their capacity as federal

employees for actions authorized by the Fair Housing Act"); <u>see also</u> <u>Davis-Warren Auctioneers,</u>

<u>J.V., v. Fed. Deposit Ins. Corp.</u>, 215 F.3d 1159, 1161 (10th Cir. 2000) (holding, based on the

"clear" language of the statute, "that § 1981 is inapplicable to alleged discrimination under color

of federal law"); <u>Lee v. Hughes</u>, 145 F.3d 1272, 1277 (11th Cir. 1998) ("Section 1981 provides a

cause of action for individuals subjected to discrimination by private actors and discrimination

under color of state law, but does not provide a cause of action for discrimination under color of

federal law.").

  District court cases, including three from this district, likewise support the conclusion that

instrumentalities of the federal government may not be sued under § 1981.  <u>See</u> <u>Williams v.</u>

<u>Glickman</u>, 936 F. Supp. 1, 5 (D.D.C. 1996) ("While specifically providing that rights under the

statute are protected against impairment by private entities and impairment 'under color of State

law,' § 1981(c) does not address impairment by the federal government."); <u>see also</u> <u>Brown v.</u>

<u>United States</u>, 271 F. Supp. 2d 225, 229 (D.D.C. 2003) (concluding that the "clear statutory

language bars Mrs. Brown's § 1981 claim against the United States and the USDA, since

"§ 1981(c) does not address [alleged] impairment by the federal government") (quoting

<u>Williams</u>, 936 F. Supp. at 3); <u>Save Our Schools-Southeast & Northeast v. District of Columbia</u>

<u>Bd. of Educ.</u>, No. Civ.A. 04-1500 (HHK), 2006 WL 1827654, at *6 (D.D.C., July 3, 2006)

(following <u>Brown</u> in dismissing plaintiffs' § 1981 claim against the secretary of the U.S.

Department of Education);  Carlton v. Ryan, 916 F.Supp. 832, 838 (N.D. Ill.1996) (noting that

"§ 1981 does not apply to the federal government").  Because plaintiff similarly alleges that she

was discriminated against by federal employees acting under the color of federal law, her § 1981

claim against defendant fails under the plain terms of the statute.  See Brown, 271 F. Supp. 2d at

229.

The absence of any language in § 1981 indicating that the statute authorizes suits against

the federal government or its employees also demonstrates that the United States has not waived

its sovereign immunity with respect to that statute.  As explained above, defendant is an

instrumentality of the federal government and is therefore immune from suit absent an

unequivocal waiver of sovereign immunity.  See Mitchell, 445 U.S. at 538 (explaining that "[a]

waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'")

(quoting United States v. King, 395 U.S. 1, 4 (1969)).  Another judge on this court has

concluded, and every court of appeals to address the question agrees, that § 1981 contains no

such "unequivocal" waiver of the United States's sovereign immunity.  See Idrogo v. U.S. Army,

18 F. Supp. 2d 25, 29 (D.D.C. 1998) (dismissing § 1981 claim against the U.S. Army based on

federal sovereign immunity); see also Affiliated Prof'l Home Health Care Agency v. Shalala, 164

F.3d 282, 286 (5th Cir. 1999) (explaining that the Fifth Circuit "has long recognized that suits

against the United States brought under [42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988] are barred

by sovereign immunity"); United States v. Timmons, 672 F.2d 1373, 1380 (11th Cir. 1982)

(same); Omeli v. Nat'l Council of Senior Citizens, 12 F. App'x 304, 307 (6th Cir. 2001)

(unpublished) (affirming district court's dismissal of § 1981 claim against the Environmental

Protection Agency on sovereign-immunity grounds).    Plaintiff has not pointed to, and the Court

has not uncovered, any cases contradicting this consistent line of authority.  Even if it were

cognizable under the language of § 1981, therefore, plaintiff's suit would be barred by sovereign

immunity.  Accordingly, defendant's motion to dismiss the portion of Count One purporting to

assert claims pursuant to § 1981 will be granted.

III.     **Plaintiff's Disparate Impact Claims Based on Age and Race**

A disparate impact cause of action challenges a facially-neutral employment practice that

functions to disproportionately affect a protected class.  See Griggs v. Duke Power Co., 401 U.S.

424, 431 (1971).  The disparate impact analysis has been applied in the context of subjective

employment criteria as well as objective or standardized tests.  See Watson v. Fort Worth Bank

& Trust, 487 U.S. 977, 989 (1988).  To carry her prima facie case burden with respect to the

disparate impact claim, plaintiff must identify the specific employment practice that is challenged

and amass "statistical evidence of a kind and degree sufficient to show that the practice in

question has caused the exclusion of applications for jobs or promotions because of" her

membership in the protected class.  Id. at 994.  If this burden is satisfied, then defendant must

rebut plaintiff's showing by presenting evidence tending to establish that the challenged

employment practice is rooted in legitimate business judgment.  Id. at 998.  Assuming that

defendant is able to do so, plaintiff "must [then] show that other tests or selection devices,

without similarly undesirable racial effect, would also serve the employer's legitimate interest in

efficient and trustworthy workmanship."  Id.  As with all claims analyzed under the McDonnell-

Douglas framework, the ultimate burden always rests with plaintiff.  Id.

Defendant submits that plaintiff has not sufficiently described any facially-neutral

employment practice that allegedly impacted her in a disparate manner based upon her age or

race.  Def.'s Mem. Supp. at 6.  Plaintiff, in response, asserts that her "factual allegation

sufficiently provides the basis of the Plaintiff's Complaint."  Pl.'s Opp'n at 12.  The Court

disagrees with plaintiff.  Not even the most generous reading of her factual allegations unearths

any identification of a specific employment practice that is generally applicable and facially-

neutral, but has functioned disproportionately with respect to plaintiff or members of her

protected class.  There is likewise no mention of the existence of any statistical or empirical data

that may support causation.  Accordingly, defendant's motion to dismiss Count One will be

granted.

## IV.   Plaintiff's Claims of Disparate Treatment Based on Race

Defendant next argues that plaintiff's disparate treatment claim must be dismissed

because she has not established a prima facie case of discrimination.  See Def.'s Mot. at 8-10.

Defendant interprets plaintiff's claim as a traditional non-promotion claim, under which a

plaintiff must show that: (1) she is a member of a protected class; (2) she applied for an available

position for which she was qualified; and (3) she was not selected.  See id. at 9 (citing Lathram,

336 F.3d at 1089; Stella, 284 F.3d at 139; Cones v. Shalala, 199 F.3d 512, 516 (D.C. Cir. 2000)).

It is undisputed that plaintiff is a member of a protected class and that she never applied for the

position advertised in the 2003 vacancy announcement.  The Court disagrees, however, with

defendant's contention that the failure to apply is fatal to plaintiff's claim.  Under Fed. R. Civ. P.

8(a), the Court is required to construe plaintiff's complaint liberally.  See, e.g., Leatherman, 507

U.S. at 164.  At the motion to dismiss stage, Fed. R. Civ. P. 12(b)(6) further requires the Court to

draw all reasonable inferences in plaintiff's favor.  See Scheuer, 416 U.S. at 236.  Although the

language of the Amended Complaint certainly appears, at first blush, to support defendant's

interpretation, a closer reading reveals that the facts pled actually challenge the denial of plaintiff's opportunity to compete for the position. Hence, plaintiff may satisfy her prima facie case burden by establishing merely that she suffered an adverse employment action that gives rise to an inference of discrimination. Chappel-Johnson v. Powell, 440 F.3d 484, 488 (D.C. Cir. 2006) (citing Brody, 199 F.3d at 452).

The Chappel-Johnson standard is a natural outgrowth of the flexibility that characterizes the prima facie case requirements under Title VII. Id. (citing Swierkiewcz, 534 U.S. at 512; Burdine, 450 U.S. at 253). Where, as here, a plaintiff challenges her deprivation of an opportunity to compete for a position, the failure to apply is presumably a function of the alleged discrimination. Simply put, an objectively tangible harm may be alleged with sufficient specificity by a statement of the employer's actual practices regarding "the manner in which [it] publicizes vacancies [and its] recruitment techniques" or its "responses to casual or tentative inquiries, and . . . the racial composition of that part of [the] workforce from which [it] has discriminatorily excluded members of minority groups." Intern. Bhd. of Teamsters v. United States, 431 U.S. 324, 365-366 (1977). Hence, plaintiff's assertions that the actions of defendant led her to "believe that the vacancy announcement was meant to fill one position" and chilled her from applying for the position, but that defendant then actually filled five positions, Amend. Compl. at 7 ¶ 15, sufficiently allege an adverse personnel action. Defendant's motion to dismiss this portion of Count Two will, accordingly, be denied.

## V.   Plaintiff's Retaliation Claims

To establish a prima facie case of retaliation, plaintiff must show: "(1) that she engaged in statutorily protected activity, (2) that the employer took an adverse personnel action; and (3) that

a causal connection existed between the two." Mitchell, 759 F.2d at 86 (quoting McKenna, 729

F.2d at 790); Brody, 199 F.3d at 452.  The parties agree that by filing complaints of

discrimination plaintiff engaged in a protected activity.  They disagree regarding whether she

suffered an adverse personnel action that has a causal nexus to the discrimination complaints.[3]  In

the retaliation context, an adverse personnel action is defined as one that could conceivably

dissuade a reasonable worker from making or supporting a charge of discrimination.  See

Burlington Northern & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006); Rochon v.

Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006).  To be considered adverse, the action must, of

course, constitute an "'objectively tangible harm,'" and the defendant's conduct must be judged

"from the perspective of a reasonable person in the plaintiff's position 'considering all the

circumstances.'"  Brown v. Snow, 407 F. Supp. 2d 61, 65 (D.D.C. 2005) (citing Oncale v.

Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)).

    A. *Downgraded Job Responsibilities*.

    Defendant contends that plaintiff's allegations regarding her downgraded duties - - the

removal of EEO counselor-coordinator duties, see Amend. Compl. at 12 ¶ 31- - are insufficient

to satisfy these standards.  Def.'s Mot. at 11.  The Court disagrees.  A significant change in job

responsibilities is a "classic and 'widely recognized' example of 'forbidden retaliation.'"  White,

---

[3]Although defendant has addressed the issue of causation in connection with the
retaliation claim based upon plaintiff's AWOL designation and attendant loss of three hours' pay,
it has not done so with respect to the other two retaliation claims.  See Def.'s Reply at 11-12.
The Court has already dismissed the retaliation claim arising from the AWOL designation, and
hence there is no need to address causation for it.  Moreover, the Court declines to address the
issue of causation regarding the remaining retaliation claims where defendant has not pressed the
issue.

126 S. Ct. at 2416; see also Holcomb v. Powell, 433 F.3d 889, 902 (D.C. Cir. 2006).  Such a

harm is not a "purely subjective injury," and may indeed amount to a "'materially adverse

consequence[] affecting the terms, conditions, or privileges of employment or future employment

opportunities . . . [which may constitute] an objectively tangible harm.'"  Holcomb, 433 F.3d at

902 (quoting Forkkio, 306 F.3d at 1130-31; Brown, 199 F.3d at 457).  Defendant's motion to

dismiss this portion of Count Three is therefore denied.

    B.  *Refusal to Provide Plaintiff With an Enclosed Office.*

    According to defendant, plaintiff's remaining claim - - the refusal to assign her to an

enclosed office, see Amend. Compl. at 12 ¶ 31 - - is insufficient to constitute a materially adverse

employment action.  Def's Mot. at 11.   It is certainly true that "[n]ormally petty slights, minor

annoyances, and simple lack of good manners" are not actionable under Title VII because they

would not deter a reasonable employee form engaging in a protected activity (here, the filing of a

discrimination complaint).  See White, 112 S.Ct. at 2415.  After all, Title VII "does not set forth

a 'general civility code for the American workplace.'"  Id. at 2416 (citing Oncale, 523 U.S. at 80).

It may be that, in some cases, relocation to a significantly less desirable work space might deter a

reasonable employee from filing a complaint of discrimination (or otherwise engaging in

protected activities).  This, however, is not such a case.  Here, plaintiff asserts that she was

retaliated against based upon her filing of the second discrimination complaint at the

administrative level, which challenged her relocation from an office to a cubicle that had

previously been used as a supply storage area.  Amend. Compl. at 11-12 ¶¶ 30-31.  The action

that is challenged as retaliatory is not the initial relocation, but rather the subsequent failure of

plaintiff's third-line supervisor to upgrade her work space from the cubicle that she disliked to an

enclosed office that she would have preferred.  Id.  In effect, then, plaintiff is claiming as

retaliatory the "action" of not curing the initial relocation that was the basis for the discrimination

claim that constitutes protected conduct.  Hence, the subsequent challenged conduct does not

involve any tangible change in the terms, conditions, or privileges of employment.  Instead, it

constitutes merely a preservation of the then-existing status quo.  One cannot, however, bootstrap

a retaliation claim from what amounts to inaction to reverse the challenged relocation.

Accordingly, this portion of Count Three will be dismissed.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss will be granted in part and

denied in part.  Only the disparate treatment non-promotion claim in Count Two and one aspect

of the retaliation claim in Count Three, focused on downgraded job responsibilities, survive as

explained above.  A separate order has been posted on this date.

    /s/    John D. Bates_____
JOHN D. BATES
United States District Judge

Dated:  September 18, 2006