UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LANNIE PRINCE,

    Plaintiff,

        v.

CONDOLEEZA RICE, SECRETARY,
U.S. DEPARTMENT OF STATE,

    Defendant.

Civil Action No.  05-0663 (JDB)

## MEMORANDUM OPINION

Plaintiff Lannie Prince filed her Amended Complaint in this action on June 2, 2005.  In it, she brought various claims against her employer, the U.S. Department of State, for discriminating against her on the basis of her age, gender, and race.  On September 18, 2006, this Court dismissed: (1) all of Prince's claims pursuant to 42 U.S.C. § 1981; (2) all of her claims stemming from the Department's facially-neutral employment practices that allegedly had a discriminatory disparate impact upon her on the basis of race, gender, or age; (3) her intentional infliction of emotional distress claim; and (4) portions of her retaliation claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  See Prince v. Rice, 453 F. Supp. 2d 14 (D.D.C. 2006) ("Prince I").  Prince's claims that survived the motion to dismiss relate to race discrimination concerning her non-promotion to the grade of GS-13 (Count II) and her allegation that the Department retaliated against her for filing an Equal Employment Opportunity ("EEO") complaint by removing a number of her job-related duties (Count III).  Following discovery, the Department has now moved for summary judgment on those remaining claims and that motion is fully briefed and ripe for resolution.  Upon careful consideration, and for the reasons set forth

below, the Court will grant the Department's motion.

## BACKGROUND

The underlying facts relating to this dispute were set out in detail in Prince I, 453 F. Supp. 2d at 19-20, and need not be fully repeated here. For present purposes, the record[1] reflects the following. Lannie Prince, an African-American female, is presently employed as an EEO Specialist at the U.S. Department of State, Office of Civil Rights. See Def.'s Stmt. of Facts ¶ 1. She has been employed at the Department since 1975 and has held her current position at the GS-12 grade since approximately 1994. Id. ¶ 2. According to Prince, when Assistant Secretary for Civil Rights Barbara Pope first joined the Department in 2001, Ms. Pope made it clear that improving the Department's standing with respect to processing EEO complaints was one of the chief initiatives that she aimed to pursue while at the Department. See Prince Decl. ¶¶ 9-11. To that end, Ms. Pope supposedly informed the current EEO staff that she could secure for them promotions to the GS-13 level in the event that they were able to achieve her stated goals of: (1) reducing the outstanding EEO case load; and (2) processing incoming complaints within 180 days of receipt. Id.

As part of the new focus, Ms. Pope allegedly charged the EEO Specialists -- including Prince -- with managing "all aspects of processing cases" and informally changed their titles to

---

[1] Unfortunately, Prince has failed to file a response to the Department's statement of material facts in violation of LCvR 7(h). The declaration submitted along with Prince's opposition memorandum is no substitute for the statement required by LCvR 7(h). Thus, the Court is left with no choice but to cite to the Department's statement of facts throughout this background section and to utilize Prince's complaint, attached declaration, and deposition excerpts to fill in any gaps in the record. The Court will draw all available inferences, such as they are, in favor of Prince, but she has made that task more difficult by failing to adhere to the local rules of this Court.

"EEO Managers." Id. ¶ 12. After several inquiries, Ms. Pope evidently assigned Fredrick Whittington, an employee in the Office of Civil Rights, with the task of drafting the new GS-13 position description for EEO Managers. Id. ¶¶ 14-15. According to Prince, the draft position description "did not include the duties they were told to perform as [EEO] Managers" and there was "no follow up" by Ms. Pope concerning any proposed changes to the draft description. Id. ¶¶ 15-16. To date, Prince has not had her position upgraded to the GS-13 level through non-competitive promotion.

Meanwhile, at some time prior to October 2002, the Department issued Vacancy Announcement No. 02-0705 for the position of EEO Manager as a "generic GS-13 position." See Def.'s Opp'n Pope Decl. ¶ 6. Before the Department released that announcement, Ms. Pope "approached Ms. Prince, Ms. Marjorie Gross, and Ms. Jacqueline Canton individually to make sure they were aware of the upcoming vacancy announcement and encouraged all three to apply." Id. At some point in October 2002, the Department also issued Vacancy Announcement No. 03-0047. See Def.'s Stmt. of Facts ¶ 10. According to Ms. Pope, that announcement was effectively a re-issue of No. 02-0705. See Pope Decl. ¶ 7. Ms. Pope had initiated the second issuance because Ms. Gross, who had evidently "expressed interest in the position," had failed to apply during the first window of opportunity. Id. Thus, Ms. Pope "arranged for the vacancy announcement to be reissued so [Ms. Gross] could apply. This is why the Agency reissued the announcement as Vacancy Announcement 03-0047." Id.

Neither party has provided the Court with a copy of either vacancy announcement. The Department, however, has filed a copy of the Position Description that accompanied Announcement No. 03-0047. That document lists the available position as "Equal Employment

Manager" at a level of GS-13.  See Def.'s Opp'n Brown Decl. Attach. 2 (hereinafter "Position Description").  There are, however, some ambiguities found in the Position Description.  Although the face of the document lists the position title as "Equal Employment Manager," the first page of the duty descriptions lists the title as "Affirmative Action Outreach Coordinator" and outlines responsibilities relating to affirmative action projects at the Department.  On the other hand, beginning on page three of the Position Description, there is a list of responsibilities that deal with traditional EEO management rather than affirmative action initiatives.  In any event, the Position Description also plainly states on the first page that the position is "limited to TWO (2) incumbents."  Id.

Prince did not apply for the position listed in Vacancy Announcements No. 02-0705 and No. 03-0047.  Thereafter, following an extensive interview process, in March 2003 Ms. Pope extended EEO Manager offers to five[2] candidates who applied pursuant to the vacancy announcements.  See Pope Decl. ¶ 10.  Of the five candidates who received employment offers, one individual was Asian-American, another was of "Hispanic origin," and three were "African-American."  Id.  When the five offers were announced, Prince was surprised to learn that more than one position was filled pursuant to the announcements -- it was her understanding that only one spot was available.  For her part, Ms. Pope indicated that she "advised Ms. Prince as well as all qualified candidates" that she intended to make multiple offers to applicants who responded to the vacancy announcements.  Id. ¶ 8.

---

[2] Ms. Pope stated in her declaration that there were approximately eight vacant positions at the time the vacancy announcements were issued and that she "was prepared to hire several people off the certificate in the event [she] found more than one qualified candidate."  See Pope Decl. ¶ 8.

In her complaint and attached declaration, Prince stated that she did not apply for the advertised position because she believed that: (1) there was only one vacancy and she did not view herself as the most qualified candidate for that position, see Am. Compl. ¶ 16; and (2) the sole vacancy entailed affirmative action duties that did not interest her, see Prince Decl. ¶¶ 19-21. She maintains that she would have applied for the position, however, if she had been informed that more than one vacancy was available. Exasperated with the delays in having her current position upgraded to GS-13 through the non-competitive promotion process, and believing that she had been denied a full opportunity to participate in the competitive process advertised through the vacancy announcements, Prince filed an EEO complaint with the agency on August 6, 2003. See Am. Compl. ¶ 6. Her complaint sought promotion to the position of EEO Manager at the GS-13 level retroactive to March 2003. See Def.'s Opp'n Ex. 1.

In the aftermath of that EEO filing, Prince claims that she was the victim of unlawful retaliation. Hence, on June 7, 2005, she filed another EEO complaint, this time alleging unlawful retaliation. See Def.'s Mot. to Dismiss Attach. 1. The complaint lists the acts of reprisal against her, which include: (1) the Department's designation of Prince as absent without leave ("AWOL") for a period of three hours on November 2, 2004 while she left the office to vote; and (2) "reassignment of [her] duties relating to acceptance and dismissal of complaints and requiring [her] to serve as an EEO Counselor receiving assignments from a lower graded employee." Id.[3]

---

[3] On August 3, 2005, Prince attempted to supplement her retaliation complaint to add another alleged act of reprisal. She stated that her receipt of a "fully successful" performance review for the period of January 1, 2004 through December 31, 2004 constituted an act of retaliation. See Def.'s Mot. to Dismiss Ex. 1. Presumably, Prince believes that her work product during that period warranted a higher rating, but she has not elaborated on the argument in this proceeding, nor has she provided the Court with any update concerning the state of the administrative process on this question. Indeed, she makes no mention of this issue whatsoever in

This Court dismissed the AWOL claim in Prince I, which leaves only the reassignment of Prince's duties to form the gravamen of her retaliation claim here.

**STANDARD OF REVIEW**

**I.   Summary Judgment**

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" that it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); see Celotex, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50

---

her opposition briefing, and hence the Court assumes that she has abandoned it as a basis to support her retaliation claim.

(citations omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## II.    The McDonnell Douglas Framework

The framework for establishing a prima facie case of unlawful discrimination or retaliation was introduced for Title VII claims in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  The first step in the analysis requires a plaintiff to carry the burden of establishing a prima facie case by a preponderance of the evidence.  McDonnell Douglas, 411 U.S. at 802; Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  In order to make out a prima facie case of discrimination, a plaintiff must show that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002) (citing Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999)).  Similarly, to establish a prima facie case of retaliation a plaintiff must demonstrate: "(1) that she engaged in statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two." Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985) (quoting McKenna v. Weinberger, 729 F.2d 783, 790 (D.C. Cir. 1984)); Brown, 199 F.3d at 452.  Under the Supreme Court's decision in Burlington Northern & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006), an adverse employment action in the retaliation context is one that could conceivably dissuade a reasonable worker from making or supporting a charge of discrimination. See also Velikonja v. Gonzales, 466 F.3d 122, 124 (D.C. Cir. 2006); Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006).

Once the plaintiff establishes a prima facie case, the burden shifts to the employer to

articulate a legitimate, non-discriminatory reason for its actions.  McDonnell Douglas, 411 U.S. at 802.  The employer's burden, however, is merely one of production.  Burdine, 450 U.S. at 254-55.  The employer "need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  Id.

Where assessment of the employer's legitimate, nondiscriminatory reason becomes necessary, a prolonged evaluation of the sufficiency of plaintiff's prima facie case is unnecessary, for the central inquiry then becomes "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis."  See Adeyemi v. District of Columbia, 525 F.3d 1222, 1226 (D.C. Cir. 2008); see also Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494(D.C. Cir. 2008) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08, 511 (1993), and U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714-16 (1983)).  "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors . . . includ[ing] the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148-49 (2000); accord Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc); see also Waterhouse v. District of Columbia, 298 F.3d 989, 992-993 (D.C. Cir. 2002).

In other words, the McDonnell Douglas shifting burdens framework effectively

evaporates -- the sole remaining issue is discrimination or retaliation <u>vel</u> <u>non</u>, and "to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason."  <u>Lathram v. Snow</u>, 336 F.3d 1085, 1088 (D.C. Cir. 2003); <u>see</u> <u>Reeves</u>, 530 U.S. at 142-43.  Examination of that issue in this setting therefore requires consideration of all the relevant circumstances in evidence, including the strength of the prima facie case, any direct evidence of discrimination, any circumstantial evidence that defendant's proffered explanation is false (which may be enough with the prima facie case to infer unlawful discrimination or retaliation), and any properly considered evidence supporting the employer's case.  <u>Reeves</u>, 530 U.S. at 147-48; <u>see</u> also <u>Adeyemi</u>, --- F.3d at ---, slip op. at 8; <u>Teneyck v. Omni Shoreham Hotel</u>, 365 F.3d 1139, 1151 (D.C. Cir. 2004); <u>Lathram</u>, 336 F.3d at 1089; <u>Waterhouse</u>, 298 F.3d at 993; <u>Aka</u>, 156 F.3d at 1290.

## **DISCUSSION**

Before turning to the analysis of Prince's remaining claims, the Court must pause to observe the inadequacy of Prince's opposition memorandum.  At some points, Prince, through her counsel, quotes at length (without citation) from this Court's opinion in <u>Prince I</u>.  Putting aside any attribution concerns, Prince ignores the difference between the appropriate standards governing motions to dismiss and motions for summary judgment.  But the Court's analysis at the motion to dismiss phase can provide little aid to Prince here.  At other points, Prince discusses at length precedent that has no relevance to resolving the issues presented by the instant motion.  The Department, in turn, asks the Court to treat its unrebutted arguments in favor of summary judgment as effectively conceded.  The Court declines to exercise that draconian option, however,

because summary judgment is warranted without the need to resort to implicit concessions.

## I.     Race Discrimination in Non-Promotion

As explained in Prince I, the alleged adverse employment action at issue here is the "deprivation of an opportunity to compete for a position." 453 F. Supp. 2d at 28.  Thus, Prince's failure to apply for the position contained in the vacancy announcements is not fatal to her employment discrimination claim because "the failure to apply is presumably a function of the alleged discrimination." Id.  Instead, Prince's "assertions that the actions of [the Department] led her to 'believe that the vacancy announcement was meant to fill one position' and chilled her from applying for the position . . . sufficiently allege an adverse personnel action." Id. (quoting Am. Compl. ¶ 15).  That, as this Court noted in Prince I, satisfied Prince's "prima facie case burden by establishing . . . that she suffered an adverse employment action that gives rise to an inference of discrimination." Id. (citing Chappell-Johnson v. Powell, 440 F.3d 484, 488 (D.C. Cir. 2006)).  Hence, the motion to dismiss that claim was denied in Prince I and discovery ensued.

Under the McDonnell Douglas framework discussed above, it is now the Department's burden to proffer a legitimate non-discriminatory explanation for its action.  In this case, the Department contends that "it [is] permissible and not uncommon under personnel policies for decision makers like Ms. Pope to make more than one selection from a selection certificate for a vacancy announcement." See Def.'s Mot. at 15.  In support of that proposition, the Department has submitted the declaration of Janine M. Brown, a Human Resources Specialist at the U.S. Department of State, who explained that: "It is not unusual to make more than one selection from a vacancy announcement, even if the vacancy announcement indicates that only one selection will

be made. In fact, it is often more efficient and faster to make multiple selections rather than issue multiple vacancy announcements." See Brown Decl. ¶ 6. Indeed, although the Position Description in this case does not appear to indicate directly the precise number of positions available, the annotation that the position is "limited to TWO (2) incumbents" strongly suggests that more than one vacancy was available. Id. Attach. 2.

Moreover, Ms. Brown has stated that "[a]s long as block number 9 on the position description indicates it is 'subject to IA [identical additional] action' and there are available vacant positions in the office, it is permissible to make multiple selections." See Brown Decl. ¶ 6. Upon review of the applicable Position Description, it is evident that block 9 is checked, which indicates that multiple selections were authorized in this instance.[4] In short, the Department has articulated a legitimate, non-discriminatory reason for Ms. Pope's decision to select more than one applicant -- namely, that it was common practice do to so and more efficient to boot. Thus, the inquiry now proceeds to the final step in the McDonnell Douglas framework, where the shifting burdens process is complete and the remaining issue is discrimination vel non.

The question now is whether a reasonable jury could conclude from all of the evidence available that the "adverse employment decision was made for a discriminatory reason." Lathram, 336 F.3d at 1088. The Court concludes that Prince has failed to carry her burden in this

---

[4] In her declaration, Prince assails Ms. Brown's statement as "inaccurate" and further contends that it does not "reflect the true position of things" and was "aimed at confusing this Honorable Court into believing that what Ms. Pope did was proper." See Prince Decl. ¶¶ 38, 40. She even suggests that the "attachments to the affidavit of Janine Brown were doctored and significantly altered to support the Agency's position." Id. ¶ 36. There is no support whatsoever for Prince's speculation that Ms. Brown's declaration, which was given under oath, is inaccurate or untruthful. Similarly, there is no support for Prince's bald assertion that the attached documents have been altered.

case.  In short, she has produced no evidence to support the supposition that her non-promotion was the result of unlawful discrimination.  Nor has she proffered any evidence that the Department's non-discriminatory explanation is mere pretext; in fact, as the Department notes, Prince "has failed to propound or request any discovery to be able to substantiate the existence of pretext."  See Def.'s Mot. at 15 n.3.  The only argument advanced by Prince is that the sworn declarations of Ms. Pope and Ms. Brown are "inaccurate and self serving," see Pl.'s Opp'n at 15, and that the documents attached to Ms. Brown's declaration were "fabricated and created in response to this lawsuit," id.  But beyond Prince's bare assertions, there is no evidence whatsoever to support these contentions.  Mere allegations, of course, are insufficient at the summary judgment stage.  See Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999) (non-moving party may not "rely solely on allegations or conclusory statements" to defeat a motion for summary judgment).

The Department correctly points out that "there is no evidence that anyone involved in the decision making process attempted to mislead or discourage [Prince]."  See Def.'s Mot. at 15.  In fact, Ms. Pope encouraged Prince to apply for the position announced by the vacancy posting.  See Pope Decl. ¶ 6.  Prince herself confirmed as much in her deposition.  See Prince Dep. at 84:24 - 85:8 ("I remember Barbara Pope poking her head in and saying to look out for the vacancy announcement.").[5]  Thus, there is no evidence to support Prince's bare assertion that "Ms. Pope intentionally made false representation [sic] in the vacancy announcements in order to discourage me from applying for the vacancy."  See Prince Decl. ¶ 31.  Indeed, there is also

---

[5] In her declaration, Prince states that "at no time did Ms. Pope approached [sic] me and encouraged [sic] me to apply for the position."  See Prince Decl. ¶ 32.  That assertion is belied by Prince's account given during her deposition.

nothing in the record to suggest that there are any false representations contained in the vacancy announcements or the Position Description at all, let alone intentionally false statements. The Department has demonstrated that although the vacancy announcements themselves were silent on the number of positions to be filled, it was common practice to make several selections on the basis of a single vacancy announcement.[6] Prince has not rebutted that showing in any way.

Moreover, although certain parts of the Position Description are admittedly somewhat confusing -- specifically, the portions that refer to the affirmative action title and duties -- the very first page of the Position Description plainly states that the available position was "EEO Manager" at the GS-13 grade, which is the position that Prince sought. Notwithstanding that, Prince evidently made no effort to obtain clarification on the scope of the duties required or the number of positions available. See Prince Dep. 133:19 - 134:7. Moreover, the vacancy posting served as a general announcement that applied broadly to all potential applicants -- to the extent that it was confusing, it was equally so for all of the candidates. Put another way, there is no evidence whatsoever that the announcement was designed to mislead Prince herself (or anyone else, for that matter) into not submitting an application.[7]

---

[6] The only factual dispute that the Court can identify that is potentially relevant to this motion is whether Ms. Pope informed Prince that she intended to make several employment offers on the basis of the single vacancy announcement. In her declaration, Ms. Pope stated that "[i]t is my memory I advised Ms. Prince as well as all the qualified candidates in my office of [that] fact." See Pope Decl. ¶ 8. For her part, Prince insists that Ms. Pope did not make "her intentions clear that there were five positions to be filled." See Prince Decl. ¶ 23. Nevertheless, this dispute does not preclude summary judgment because this is not an issue of material fact; even assuming that Ms. Pope never notified Prince that there were five positions available, that would not change the analysis here.

[7] Indeed, the fact that Ms. Pope informed Prince to watch out for the vacancy announcement undermines any suggestion that the posting was designed to dissuade Prince from applying.

Even if Prince had demonstrated that Ms. Pope harbored some personal animus towards her -- which she has not -- that alone is not enough to establish discrimination on the basis of race. Simply put, Prince has produced no evidence that any of the Department's (or Ms. Pope's) actions relating to the non-promotion were motivated by Prince's race.[8] In fact, all five of the individuals who received EEO Manager offers through the competitive process belong to racial minority groups, three of whom share the same race as Prince. The record thus suggests that the Department was not engaged in impermissible discrimination on the basis of race.

In sum, Prince has produced no evidence to support her contention that her non-promotion was the result of unlawful race discrimination. The record establishes, at best, that there may have been some confusion or miscommunication between Prince and the Department regarding the circumstances of Prince's putative promotion. That does not constitute, however, prohibited discrimination on the basis of race, particularly in light of the Department's reasonable non-discriminatory explanation of the promotion decisions made here. On this record, then, no reasonable jury could find in Prince's favor on Count II of the amended complaint. Hence, the Court will grant the Department's motion for summary judgment on that claim of race discrimination in non-promotion.

## II.     Retaliation

Turning to Prince's retaliation claim, there appear to be two possible bases underlying her complaint on this point. First, Prince says that the removal of her EEO Counselor duties

---

[8] In her deposition, Prince noted that Ms. Pope at times referred to gatherings of individuals as "you people." See Prince Dep. 235:1-25. Prince could not recall, however, whether those gathering consisted only of "black people" or whether "white people" were present as well. Id. Thus, the mere use of this phrase alone does not establish that any of Ms. Pope's actions were motivated by unlawful racial considerations.

constitutes unlawful retaliation. Second, she maintains that the "reassignment of [her] duties relating to acceptance and dismissal of [EEO] complaints" also amounts to retaliation. See Def.'s Mot. to Dismiss Ex. 1. As explained below, there is no merit to either contention, and hence the Court disagrees on both counts.

    To begin with, Prince admits that the decision to remove her EEO Counselor responsibilities -- which, in any event, were voluntary and conferred no additional salary or benefits aside from an enclosed office -- occurred in 1998 (or 1999 at the latest). See Pl.'s Opp'n at 10. It is readily apparent, then, that such action cannot in any sense constitute reprisal for filing an EEO complaint in 2003; it is literally impossible to establish a causal connection between those two events. To the extent that Prince suggests that the removal of her EEO Counselor responsibilities -- which, in fact, she actually requested be reassigned to another employee in the Office of Civil Rights, see Prince Dep. 97:1 - 98:25 -- was retaliation for some protected activity that occurred prior to 1998, that complaint is untimely. See Clark County School Dist. v. Breeden, 532 U.S. 268, 274-74 (2001) (explaining that temporal proximity between protected activity and alleged reprisal must be "very close" and rejecting 20 month delay as sufficient to establish causation). In short, there is no way that the reassignment of EEO Counselor duties can serve as an adequate basis to support Prince's retaliation claim here.

    Prince's other basis -- the reassignment of her duties related to accepting and dismissing EEO complaints[9] -- ultimately fares no better. There is no need to engage in a lengthy discussion regarding whether Prince has satisfied her prima facie case burden on this point because the

---

[9] Oddly enough, the Department does not address this contention in its briefing on summary judgment. That is likely because Prince has not made this argument apparent and the Court has only discovered this point by searching the record on its own.

Department (through Ms. Pope) has already proffered a legitimate, nondiscriminatory explanation for this action. In such instances, the D.C. Circuit has indicated that district courts should dispense with the typical McDonnell Douglas burden-shifting framework and proceed directly to the final inquiry: whether the plaintiff has produced sufficient evidence to permit a reasonable jury to conclude that the alleged adverse employment action was the result of unlawful discrimination.

Here, the Department's non-discriminatory explanation was set forth by Ms. Pope. In the EEO Counselor's initial report regarding this dispute, Ms. Pope stated that the decision to reassign the responsibilities to accept or dismiss EEO complaints to the legal team in the Civil Rights Office was motivated by two criteria: (1) the complaint section -- of which Prince is a member -- was taking too long to complete those duties; and (2) EEOC was remanding far too many of the complaint section's dismissals. See Def.'s Mot. to Dismiss Ex. 1 at 3-4.[10] Those are both legitimate, non-discriminatory explanations for the action taken. Indeed, Ms. Pope indicated that once the transfer of responsibilities took place, both deficiencies were soon remedied. Id.

The remaining question, then, is whether Prince has adduced sufficient evidence to permit a reasonable jury to conclude that the reassignment of duties was actually undertaken in

---

[10] Ms. Pope gave the following statement in support of those assertions:

> I made the decision to move acceptances and dismissals to the legal section because the complaint section was taking on average of 50 days to complete an acceptance or dismissal. That only allowed 130 days to complete an investigation. The Current average time is from 5-15 days. In addition, EEOC was remanding most of our dismissals. Currently, there are very few remands because of the excellent legal case law that is cited on our dismissals.

See Def.'s Mot. to Dismiss Ex. 1 at 3-4.

retaliation for Prince's filing of her EEO complaint. The Court has no difficulty concluding that she has not done so. To begin with, the disputed reassignment of duties applied not only to Prince, but to two other individuals in the complaints section as well: Ms. Wendy Herring and Ms. Marjorie Gross. Id. Although the record reflects that Ms. Gross had previously participated in the EEO process, there is nothing in the record to suggest that Ms. Herring had engaged in any protected activity. The fact that Ms. Herring also had her duties reassigned at the same time strongly suggests that the action was not intended to serve as retaliation against Prince for engaging in any protected activity.

Next, Prince has offered no evidence whatsoever to rebut the Department's proffered non-discriminatory explanation. Indeed, her opposition briefing and her attached declaration do not even mention this point. What remains in the record, then, are Prince's bare allegations of retaliation found in her EEO complaint and a few statements from her deposition to the effect that the disputed reassignment has not succeeded in reducing processing time. Neither is a sufficient basis to survive summary judgment. As previously explained, mere allegations and bare conclusory statements do not suffice at the summary judgment phase. And the fact that the reassignment may not have been successful in achieving its stated goals is immaterial for present purposes.[11] The question is not whether Ms. Pope was ultimately correct that assigning these duties to the legal team would speed up processing time and cut down on reversals, but rather whether her initial inclination to take that action was motivated by impermissible and unlawful criteria. Prince has presented no evidence at all that suggests that Ms. Pope's decision was

---

[11] In any event, Ms. Pope -- who, unlike Prince, was in a position to know whether the shuffling of responsibilities was effective or not -- has stated that the reassignment was fully successful in achieving both of its stated goals.

tainted by unlawful considerations.[12]

In sum, Prince has produced no evidence from which a reasonable jury could find in her favor on her retaliation claim. As already noted, her bare accusations and conclusory statements fall far short of what is required to survive a motion for summary judgment. Accordingly, the Court will grant the Department's motion as to Count III.

### DISCUSSION

For the foregoing reasons, the Court will grant the Department's motion for summary judgment. A separate Order accompanies this Memorandum Opinion.

                                                  /s/ John D. Bates  
                                                  JOHN D. BATES  
                                          United States District Judge

Dated: August 14, 2008

---

[12] Indeed, Prince herself states that the legal team "needed some work," see Prince Dep. 158:4, which lends support to the conclusion that Ms. Pope believed that the reassignment would reduce processing time because the legal team was comparatively underworked.